UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DARLA S. WALL,

    Plaintiff,

v.                                              Case No. 2:06-cv-547-FtM-29-DNF

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.
_____/

REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

The Plaintiff filed her application for a period of disability, and disability insurance benefits under Title 42 U.S.C. Sec. 405(g) of the Social Security Act and for Supplemental Security Income[2] on December 5, 2003, alleging disability beginning February 7, 2003. (Tr. 13). The claim was denied initially on May 24, 2004, and upon reconsideration on October 7, 2004. (Tr. 268-271). On April 6, 2006, a hearing was held before Administrative Law Judge Victor L. Cruz. On June 30, 2006, ALJ Cruz issued his decision which denied the Plaintiff benefits. (Tr. 12-19). The Plaintiff filed a Request for Review of the hearing decision and

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Ann B. Barnhart as the defendant in this action. No further action need to be taken to continue this suit by the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1(11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

the Appeals Council denied same on August 22, 2006, making the ALJ's decision the final decision of the Commissioner. [Tr. 4-6]. For the reasons set out herein, it is recommended that this case be **REMANDED** to the Commissioner to elicit the testimony of a vocational expert.

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." (followed by the appropriate page number), and the parties have filed legal memorandums.

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On December 5, 2003, the Plaintiff filed her application for Disability Insurance Benefits and Supplemental Security Income and alleged disability beginning February 7, 2003. The Decision of ALJ Cruz, dated June 30, 2006, denied the Plaintiff's claim for benefits. (Tr. 12-19). At Step 1, the ALJ found the Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 17). At Step 2, the ALJ found that the Plaintiff had the following severe impairments: chronic neck and low back pain, status-

post anterior cervical fusion with possible pseudoarthrosis at one level and mood disorder related to her medical condition. 20 C.F.R. § 404.1545 and 416.945). At Step 3, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P, Regulation No. 4. The ALJ found the Plaintiff's testimony was not fully persuasive regarding her symptomatology and resulting limitations. (20 C.F.R. 422.406). The ALJ determined that the Plaintiff has the residual functional capacity to perform a limited range of light and sedentary work-related activities. [Tr. 18] At Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work as a waitress but found there are a significant number of jobs in the national economy, which she could perform. The Plaintiff is 47 years old, which is defined as a younger individual. (20 C.F.R. 404.1563). [Tr. 18]. Accordingly, the ALJ found the Plaintiff not disabled at step five of the sequential evaluation. 20 C.F.R. §§ 416.920(a)(4) and (g).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. REVIEW OF FACTS

The Plaintiff was born on January 15, 1959 and was 47 years of age at the time of the Commissioner's decision on June 30, 2006. [Tr. 13, 247]. The Plaintiff has a tenth grade education and her only work experience has been as a waitress. [Tr. 13, 41, 42 ] . The Plaintiff testified that she was able to read and write and do simple math calculations. [Tr. 41]. The Plaintiff alleges disability as of February 7, 2003[3]. The Plaintiff suffers from neck and back pain; shoulder pain and depression.

The Plaintiff testified that she had back surgery on May 11, 2000. Dr. George Sypert, M.D., performed "anterior cervical micro surgical decompressive diskectomies on disk spaces C4-C5, C5-C6. [Tr. 55-56]. The Plaintiff returned to Dr. Sypert eight weeks after her surgery. Dr. Sypert notes revealed the Plaintiff's "[a]nterior cervical wound is well-healed. Her neurological examination is normal. Dynamic radiographs reveal satisfactory position of her

---

[3]   The record shows that her neck and back problems began in April of 2000.

bone grafts with no evidence of instability. I have discontinued her cervical collar orthosis and started her on a gentle neck and shoulder exercise program. She is gradually to resume all normal activities without restrictions and follow-up with me on a p.r.n. basis. [Tr. 63].

The Plaintiff was seen by Dr. Michael D. Lusk,[4] M.D., May 5, 2001. The Plaintiff advised Dr. Lusk that she had been doing quite well since her surgery and the pain had been relieved. However, she related that while driving a week prior, she had "simply turned her head to the right, at which time she had excruciating pain in her neck, which then shot down into her right arm and scapula". [Tr.81]. The Plaintiff did not report any tingling or numbness, but advised she was quite uncomfortable. [Tr. 81]. The Plaintiff was assessed with "[A]cute flare-up with referred pain to the right side with obvious excruciating pain". [Tr. 83]. The Plaintiff was prescribed Percocet, Vioxx, Medro Dosepak and Valium and it was recommended she take glucosamine and chondroitin. The Plaintiff was to return in one week. [Tr. 83].

In June of 2001, a new x-ray study of the Plaintiff's cervical spine revealed "[p]artial pseudoarthrosis at 4-5, but it appears stable and does not move with flexion or extension. This may be the very reason why she is having pain". The Plaintiff was continued on Vioxx, Norco on a PRN basis, massage therapy, and return to see Dr. Lusk in six weeks. [Tr. 77].

On June 26, 2001, the Plaintiff had a total Whole Body Bone Scan which revealed "mild degenerative changes in the right shoulder ..." "[T]he remainder of the axial spine is intact as is bony pelvis, hip joints and extremities". IMPRESSION: "[1] MODERATELY INTENSE

---

[4]   At the time of this visit, the Plaintiff was advised that Dr. Sypert had retired.

UPTAKE IN LOWER CERVICAL SPINE AS DISCUSSED ABOVE.  2.  MILD DEGENERATIVE CHANGES IN THE RIGHT SHOULDER. [Tr. 78].

On July 19, 2001, Dr. Lusk reviewed all of the Plaintiff's medical history and concluded that she was suffering from pseudoarthrosis.  "{I]t is my opinion that she would benefit from surgery with restabilization of the 4-5-6 area.  I do not feel that she is healing properly back in this area, and that is why she continues to have the neck pain.  This patient is very legitimate with no secondary gain". [Tr.75].

On December 18, 2001,  D r.  Lusk felt it was reasonable to forego any additional surgery "[u]nless she developed arm pain or weakness".  The Plaintiff followed up with Dr. Lusk on December 28, 2001 and Plaintiff advised him that she was having severe right shoulder pain and was unable to sleep.  The Plaintiff was prescribed Hydrocodone (Vicodin) and an MRI was taken the same day which revealed "[a} partially incomplete fusion at C4-C5, C5-C6 and that some calcification was starting to form".  There was also some foraminal encroachment at C4-C5, C5-C6 but it did not compromise the nerve root. [Tr. 74].

The Plaintiff last worked on February 7, 2003.  In April 2003, the Plaintiff was seen by Dr. Storey[5] of LaFayette, Georgia.  At the initial visit, the Plaintiff stated she had cervical problems, arthritis and gynecological issues.  The Plaintiff's physical examination revealed tenderness over her cervical spine and paraspinal muscles and tenderness over the right shoulder.  The Plaintiff managed to have a full range of motion, even with the pain. [Tr. 99]. The Plaintiff was diagnosed  with  "[C]ervical spondylosis and chronic neck pain". [Tr. 99]. The Plaintiff was maintained on Oxycodone, Mobic, Pamelor and Xanax.  The Plaintiff called

---

[5]     The record does not provide the first name of Dr. Storey.

Dr. Storney to complain that her sleeping medicine was causing headaches. 'Tr.99]. In May of 2003, the Plaintiff was noted with chronic pain, spondylosis and neuropathy pain at night. [Tr. 98, 99]. Throughout 2003, Dr. Storey seemed to have stabilized the Plaintiff with a combination of OxyContin and Baclofen. Then in August 2003, the Plaintiff lost her insurance and could no longer afford OxyContin. [Tr. 95].

The Plaintiff was seen by Dr. Mary B. Stegman of Cypress Pain Management and Palliative Care Medicine Clinic in Ft. Myers. The Plaintiff was treated for chronic pain during 2002-2004. Dr. Stegman's records support the Plaintiff's complaint of persistent and chronic pain. [Tr. 91].

On August 18, 2004, the Plaintiff was evaluated by Dr. Gary Correnti, M.D. Dr. Correnti ordered new imaging studies. The new MRI revealed cervical fusion at C4-C5 and C5-C6 pseudoarthrosis. Dr. Correnti recommended another fusion surgery at C5-C6, but at this time the Plaintiff was still without health insurance. [Tr. 163-166].

The Plaintiff was seen for a consultative psychiatric examination with Dr. Carol Phillips, Ph.D,. on February 16, 2004. Dr. Phillips concluded the Plaintiff had a mood disorder, with major depressive features and was dependent on medication to alleviate her anxiety. The Plaintiff was rated with a 57 GAF and found to be "mildly limited regarding her ability to sustain concentration and be persistent to task". [Tr. 104].

At the request of the Disability Determination Section the Plaintiff was examined by Dr. Thomas Mullady. The Plaintiff was found to have a decreased range of motion of her lumbar spine and cervical spine. The Plaintiff's gait was normal and range of motion in all joints was within normal limits. The Plaintiff had normal bilateral grip strength and manual dexterity. [Tr.

106]. The Plaintiff was found to occasionally "be able to lift and carry for up to 1/3 of an eight hour day a maximum of ten pounds. The Plaintiff would be able to stand and/or walk with normal breaks for at least two hours of an eight hour day and sit with normal breaks for a total of about six hours in an eight hour day. [Tr. 107. Dr. Mullady's opinion of her residual functional capacity would be Sedentary work.[6]

The Plaintiff was seen on May 13, 2004, by Dr. Michael Stevens, Ph.D. who completed a Psychiatric Review Technique Form (PRTF). Dr. Stevens found the Plaintiff did not have a severe affective disorder but a "mood condition" secondary to her medical condition. [Tr. 108, 111). He found that she had "mild" limitations in her activities of daily living and in maintaining social functioning and also in maintaining concentration, persistence or pace. [Tr. 118]. Dr. Stevens found the Plaintiff to have "physical problems, pain and depression secondary to medications and pain, but her limitations due to mental problems were "non-severe". [Tr. 120].

Dr. Carole Deatrick, Ph.D. completed a PRTF on September 10, 2004, and found the Plaintiff to be "moderately limited" in understanding and remembering, the ability to carry out detailed instruction, maintain attention or concentration for extended periods, or perform activities within a schedule. The Plaintiff was "not significantly limited" in her ability to understand and remember short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with others and be able to make simple work-related decisions. The Plaintiff was found to be "not significantly limited" in interacting with the

---

[6] 20 C.F.R. §404.1567(a) - "Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

general public, getting along with coworkers or peers and the ability to maintain socially appropriate behavior. The Plaintiff was "not significantly limited" in responding appropriately to changes in the work setting, being aware of normal hazards, traveling in unfamiliar places and being able to set realistic goals. [Tr. 147-148].

Dr. Murthy Ravipati, M.D., completed a PRTF on September 20, 2004, and found the Plaintiff would have occasional limitations in all postural activities and should avoid concentrated exposure to extreme cold and heat as well as hazards. He opined that the Plaintiff's medical records supported a partial disability. {Tr. 151-158].

### III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:

    **A. THE ALJ ERRED BY RELYING EXCLUSIVELY ON THE "GRIDS" IN THE PRESENCE OF THE PLAINTIFF'S NON-EXERTIONAL IMPAIRMENTS AND BY FAILING TO CONSULT A VOCATIONAL EXPERT.**

The Plaintiff argues that the ALJ erred by relying solely on the Medical-Vocational Guidelines ("Grids") 20 C.F.R. Pt. 404, Subpt. P. App. 1 (2007) to make a decision where non-exertional impairments significantly interfered with the Plaintiff's ability to perform other work and by failing to consult a Vocational Expert ("VE").

The ALJ determined that:

> "[B]ased on the evidence in its entirety, and consistent with the claimant's activities of daily living, the undersigned finds that she has the residual functional capacity to perform restricted light work related activities with pushing, pulling, lifting, and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently; sitting, standing, and/or walking about six hours during an eight-hour workday; occasional climbing, balancing, stooping, kneeling, crouching, and/or crawling; with avoidance of moving machinery, unprotected heights or concentrated exposure to heat or cold. She can perform only simple, repetitive tasks.

The ALJ found that plaintiff was not disabled without fully considering all of the evidence of record. In determining whether a claimant's physical impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. 985 F.2d at 534.

The ALJ must also develop a full record regarding the vocational opportunities available to a claimant. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *but c.f.*, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), *quoting Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (unnecessary to call vocational expert only if the claimant can clearly do *unlimited* types of [light] work). In any event, the ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

## IV. CONCLUSION

There is a reasonable possibility that a proper analysis of plaintiff's non-exertional impairments would change the administrative results.

**THEREFORE, IT IS RESPECTFULLY RECOMMENDED:**

That the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to 42 U.S.C. § 405 (g) to allow the Commissioner to conduct a hearing to consult with and elicit testimony from a vocational expert to properly consider the limitations, if any, of plaintiff performing sedentary work on a regular and sustained basis and determine the availability of suitable alternative jobs in the local and national economy based on the above-mentioned impairments; to further reconsider the plaintiff's claims in light of the findings of the physicians who treated the plaintiff and to take additional evidence relevant to the plaintiff's impairments and make new findings consistent with this Report and Recommendation.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully Recommended in Chambers in Fort Myers, Florida, this 4th day of March, 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to

The Honorable John E. Steele
United States District Court Judge

All Counsel of Record